254 A.2d 734.

ROSBRO PLASTICS CORPORATION *vs.* EDWARD LAMANTIA *et al.*

JUNE 24. 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is a petition for certiorari brought pursuant to the provisions of G. L. 1956, §42-35-16, as amended, the administrative procedures act, whereby the director of the department of employment security[1] seeks a review of a judgment entered by the superior court reversing a decision of the department's board of review. We issued the writ and the pertinent records of this cause have been certified to us.

The record shows that in 1965 Edward LaMantia was an employee of respondent, Rosbro Plastics Corporation. He was given a two-week-unpaid vacation during the first two weeks in July of that year. LaMantia filed a claim with the department for unemployment compensation benefits for this two-week period. The department granted the application and LaMantia received the benefits. At the end of his vacation, LaMantia returned to work with Rosbro and remained there until August 26, 1965, when he voluntarily quit and left respondent's employ without good cause.[2] Thereafter, the claimant went to work for another employer and worked for this second employer for six weeks until December 19, 1965, when he was laid off because of a lack of work. He filed for benefits and received eight weekly payments which amounted to $288. Subsequently,

---

[1]Section 28-42-57 provides that the director or the board of review shall be deemed to be a party to any judicial action involving decisions which have been appealed to the courts. The instant petition was filed on February 13, 1968 by the then director of the department of employment security, Frank A. Carter, Jr. Mr. Carter resigned as director on April 15, 1968. On January 7, 1969, Mary C. Hackett was appointed director of the department. Thereafter she was substituted as party petitioner.

[2]LaMantia refiled for benefits on September 2, 1965. His application was denied because his departure made him ineligible to receive benefits at that time.

Rosbro was notified of the fact that its account had been charged for the eight payments made to LaMantia. Rosbro appealed this action to the board of review. The board denied the appeal. Rosbro then appealed the board's decision to the superior court. The appeal was heard by a justice of that court. He reversed the board's decision and found for respondent. The director then filed the instant petition.

Before proceeding further, it is appropriate that we describe in general terms the purpose and workings of the unemployment compensation system which has been established in this state. The general assembly set up the employment security fund as a source of money from which weekly benefits could be paid to an unemployed worker thereby lessening the economic impact unemployment brought the idle worker and his family. Under the provisions of the employment security act, workers who become unemployed under certain conditions, generally a lack of work, are paid weekly cash benefits for limited periods of unemployment. The maximum length of time for which benefits may be paid is 26 weeks. The fund which provides the benefits is derived from a tax which is imposed upon an employer. The act requires that at the end of each quarter in the year an employer pay a certain percentage of its quarterly payroll into the employment security fund. The percentage payable varies from employer to employer because this state has adopted the so-called merit rating system of employers' contributions to the employment security fund. This means that the percentage of payroll tax due the state depends on each individual employer's experience with unemployment. Merit rating is based on the theory that if an employer maintains a stable rate of employment during a year, his efforts will be rewarded by being allowed to pay a lower payroll tax than the employer who experiences a higher rate of unemployment. The moneys paid

into this fund by an employer are set up in an account which bears the employer's name. Also within this fund is an account called the solvency account. The solvency account is maintained by the department and it consists of interest which is earned by the fund, interest and penalties collected from employers and other moneys which cannot be credited to a specific employer's account. Benefits paid any employee are charged either to an employer's account or to the solvency account. There are two terms which appear regularly when one speaks of unemployment compensation benefits. They are the benefit year and the base period.

When LaMantia filed his claim in July 1965 for benefits during his unpaid vacation, he then established what §28-42-3 (12)[3] describes as the benefit year. The parties hereto agree that LaMantia's benefit year ran from approximately July 2, 1965 to July 2, 1966. It also follows from a reading of §28-42-3 (10),[4] that this act of filing for benefits also established his base period. It is also agreed that this period ran from approximately July 2, 1964, to July 2, 1965. Rosbro then became what is known as a base period employer. Section 28-43-3(b)(2),[5] makes it clear that in the first instance benefits paid an employee during a benefit year shall be charged to the account of his base period employer. The

---

[3] The statute says that a benefit year shall, on and after November 16, 1958, mean 52 consecutive calendar weeks, the first of which shall be the week containing the day on which he first files his claim.

[4] Any base period on or after November 16, 1958 is defined as the 52 consecutive calendar weeks ending with the second week immediately preceding the week in which such benefit year begins.

[5] The pertinent part of this section reads as follows:

"(b) Charges to each employer's account:

"* * *

"(2) An amount equal to the benefits * * * paid to each individual with respect to a benefit year, as of the date paid. Such benefits shall be charged to those employers on whose wages the benefits were based."

record discloses that Rosbro was the only employer the claimant worked for during the base period.

There is general agreement that if there was no other pertinent statute, Rosbro, as LaMantia's base period employer, would have its account charged for the benefits paid the claimant after the December 1965 layoff up until the end of his benefit year. The fact is, however, that the charging provisions of the act are subject to the following condition found in subsection (b) (5) of §28-43-3. It reads thusly:

> "(5) If any base period employer whether or not he was the most recent, shows to the satisfaction of the director that the individual who is in receipt of benefits became separated from his last employment with such employer for reasons which did result or would have resulted in a disqualification under §§28-44-17, or 28-44-18 had such base period employer been his most recent, such benefits shall be charged to the solvency account."

Rosbro contends that based upon this section, it was the "base period employer" and that the employee became separated from his last employment with it in August 1965 under circumstances which the department found to be a voluntary quitting of his employment without good cause and a disqualification under §28-44-17 and therefore it is entitled to have the benefits subsequently paid to LaMantia following his December layoff charged to the solvency account.

The director looks at the statute in an entirely different light. She claims that the legislature in enacting subsection (b) (5) intended to give the base period employer relief only in those instances where the employee's act of disqualification occurred during the base period. This was the same position taken by the board of review when it denied Rosbro's appeal.

The respondent's appeal in the superior court was heard by the late and distinguished associate justice, Fred B.

Perkins. In rejecting the contention now espoused here by the director, the trial justice, with his usual perceptiveness and characteristic clarity of expression, observed that such a view fails to take into consideration the statutory definition of charges made to an employer's account. This statute which is cited elsewhere in this opinion states that a charge on an employer's account for benefits paid a claimant shall be made *"as of the date paid."* (italics ours)

We concur in the trial justice's observation that the phrase "as of the date paid" has special significance. Obviously, it means that a charge on a base period employer's account is to be made as of the date of payment of benefits to the claimant. The statute is clear; it requires that the department charge an employer's account as of the date a benefit payment is made. It follows then that when an employer's account is charged, the employer then may attempt to persuade the director that prior to the date of payment, the employee had quit its employ without good cause or had been discharged for misconduct and that any benefits paid after his departure from its employ should be charged to the solvency account—not the employer's account.

An examination of the provisions of subsection (b) (5) shows that it is not qualified in any manner as to when it should be applied. There is nothing in its provisions which states that it shall not apply when the employee's conduct occurred prior to his receipt of compensation nor does it state that an employer is barred from seeking redress if the employee's actions occurred subsequent to the beginning of the benefit year but prior to the date of the charge. The language of the statute leaves no room for quibbling. It specifically declares that *any* base period employer who satisfies the director that a recipient of compensation benefits left his employ for a reason which would disqualify the employee from receiving benefits had he been the most

recent employer, then the employer's account may not be charged for those benefits. In essence, this was the trial justice's holding and it was correct.

To adopt the director's position would, in our opinion, make a shambles out of the merit rating system presently in effect. One of the underlying principles involved in applying merit rating is that an employer should not be charged for compensation paid an idle worker for which the employer is in no way responsible and which presumably would not have been paid except for the fault of the employee.

Here there is not one whit of evidence that Rosbro was responsible for the December unemployment experiencd by LaMantia. Had he remained at Rosbro, he might have well continued to be gainfully employed there for the balance of the benefit year. The need of the claimant for unemployment compensation benefits in late 1965 and the vicissitudes he might have undergone were of his own choosing and could not be attributed to a lack of any full employment opportunity at Rosbro. The respondent should not be charged for the eight payments made to LaMantia.

The petition for certiorari is denied and dismissed. The writ heretofore issued is quashed. The records certified to this court are ordered returned to the superior court.

*Adelson & Chernick, Melvin A. Chernick, Joseph E. Adelson,* for respondent, Rosbro Plastic Corporation.

*Lucien Capone, Louis Baruch Rubinstein,* of counsel, for petitioner, Department of Employment Security.